# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | CRIMINAL ACTION |
|---|---|
| VERSUS | NO. 17-161 |
| MUSA FATTY | SECTION "I" (3) |

## ORDER

Before the Court are Defendant Musa Fatty's Motion for Production of Brady Material and for Written Confirmation of Government's Inspection of All Locations Where Brady Material May Exist [Doc. #33] and Defendant's Motion for a Bill of Particulars. [Doc. #34]. For the following reasons, the motions are denied.

## I.   Background

The indictment and the subsequent development of this case reveal the following. On August 24, 2017, the Grand Jury for the Eastern District of Louisiana returned a three-count indictment, charging defendant Musa Fatty with one count of conspiracy to export stolen motor vehicles, in violation of 18 U.S.C. § 371, one count of attempted exportation of stolen motor vehicles, in violation of 18 U.S.C. § 553(a)(1) and 2, and one count of attempted smuggling of motor vehicles, in violation of 18 U.S.C. § 554(a) and 2.

With respect to the conspiracy count, the indictment specified four separate overt acts that were committed by Fatty and others in furtherance of the conspiracy. Specifically, the indictment alleged that: (1) on or about September 6, 2016, Fatty caused a shipping container to be exported from New Orleans to Banjul, Gambia; (2) on or about September 21, 2016, Fatty and others loaded motor vehicles into a shipping container located in Harvey, Louisiana; (3) on or about January 5, 2017, Fatty and others loaded motor vehicles into a shipping container at the same location; and (4) on or about March 8, 2017, Fatty and other individuals loaded three vehicles into a shipping

container at the same location.

The indictment arose out of an investigation conducted by the Department of Homeland Security, Homeland Security Investigations ("HSI") of a stolen-car exportation organization, of which Fatty was a member. On March 16, 2017, members of the United States Customs and Border Protection ("CBP") searched a cargo container scheduled for export from the port of New Orleans to the Gambia. The shipping manifest for this container listed three vehicles, but the descriptions of these vehicles did not match the actual contents of the container. Specifically, the manifest listed a 2004 Acura TSX, a 1994 Toyota Camry, and a 2006 Toyota Rav 4 as the items to be exported, but the container contained a 2017 Mercedes Benz, a 2015 Audi A8, and a 2017 Toyota Rav 4. All of these cars had previously been reported stolen. The Mercedes had been stolen in Marlborough, New Jersey, on February 18, 2017. The Audi had been stolen from Greenwich, Connecticut, on February 25, 2017, and the Rav 4 had been stolen from Springdale, Ohio, on February 18, 2017.

The investigation revealed that Fatty rented a storage unit in his name at a U-Haul Moving & Storage of Lapalco Blvd ("U-Haul"), located in Harvey, Louisiana. Fatty hired a company named Larsen Intermodal Services ("Larsen") to bring the aforementioned shipping container to the U-Haul and place it outside of his storage unit in Harvey. Surveillance camera footage from the U-Haul captured an individual fitting the description of Fatty, along with other still-unidentified individuals, loading the Mercedes, Audi, and Toyota Rav 4 into the aforementioned shipping container on March 8, 2017. Fatty hired Larsen to transport the shipping container with these vehicles from the U-Haul in Harvey to the port in New Orleans.

A freight forwarding company named LogiWorld L.L.C. was hired to arrange the transport of this shipping container from the port of New Orleans to the Gambia. Records from LogiWorld

L.L.C. indicated that the exporter was a person named "Gerald Faceteau." The drivers' license provided to LogiWorld L.L.C. for "Gerald Faceteau," however, was counterfeit.

HSI's investigation revealed that Fatty had arranged similar shipments in the past. Specifically, surveillance footage from the U-Haul in Harvey showed Fatty loading vehicles into other shipping containers on earlier dates, including on or about September 21, 2016 and January 5, 2017. These dates corresponded to shipments to the Gambia of containers with vehicles, according to documents from CBP.

Fatty was arrested in connection with this case in Atlanta, Georgia on October 17, 2017. After receiving *Miranda* warnings, Fatty made a recorded statement to members of the investigative team. Fatty admitted to shipping vehicles from New Orleans on several occasions. He stated that he was contacted by two separate individuals, one in New York and one in the Gambia, to ship vehicles out of New Orleans to the Gambia. According to his statement, Fatty did not know the name of the individual in the Gambia and had stored his contact information in his cellular phone as "car man." Fatty indicated that he knew the first name of the individual in New York, which coincidentally was also Musa, although he did not know this individual's last name. Fatty admitted that he shipped vehicles for "Musa" from New York on approximately five occasions, and for "car man" on one occasion. The shipment for "car man" was the last time that Fatty shipped vehicles out of New Orleans. This final container was seized by CBP, as described above.

Fatty recalled that the final container included expensive vehicles, including an Audi and Mercedes. He stated that several "Mexican" individuals transported the vehicles to New Orleans, although Fatty did not provide the names of those people. Further, Fatty said that one of "car

man's" friends also came to New Orleans in connection with the export.

Though Fatty repeatedly stated that he did not know that the vehicles were stolen, he admitted during this interview that he was suspicious because the vehicles that he was asked to export were high-value. Indeed, he stated that he insisted that "car man" bring someone to New Orleans to help load the car so that if "anything could go down," he would have someone else to point to in order to "save [him]self." Fatty also admitted that he had a "sense" that "something is not right with this shipment." Finally, at the end of the interview, Fatty stated, "My choice with this, yes, I'm guilty of putting the stuff, loading it up. I'll take that."

Fatty's initial appearance occurred in the Northern District of Georgia, and he was released on bond. Fatty appeared in this district on October 20, 2017. Fatty filed a motion seeking production of certain *Brady* materials on May 3, 2018. Specifically, Fatty requested fifteen categories of information, including such items as the substance abuse history of government witnesses, prior "bad acts" of government witnesses, grand jury materials, and instances that prior law enforcement witnesses used "profanity."

Defendant also filed a motion for a bill of particulars on May 3, 2018. Specifically, defendant requests four items: (1) the identity of the other co-conspirators; (2) the date that the conspiracy began; (3) the date that Mr. Fatty joined the conspiracy; and (4) the date that each of the other co-conspirators joined the conspiracy.

## II. The Parties' Positions

### A. Defendant's Motions

In his motion to compel, and as noted above, defendant moves for fifteen categories (and sub-categories) of allegedly *Brady* material.   He also asks that the Court order the government to

certify that it has searched all locations where *Brady* material may be located.

In his motion for a bill of particulars, defendant seeks four particulars: (1) the name of the persons with whom he allegedly conspired; (2) the date that the conspiracy began; (3) the date that he joined the conspiracy; and (4) the date that the other persons joined the conspiracy. Defendant contends that he needs this information to avoid surprise at trial and to adequately prepare his defense. He argues that this information is particularly important because he is required to notice an alibi defense.

### B. The Government's Omnibus Opposition

The government maintains that defendant's motion, titled a *Brady* motion, requests fifteen categories of documents, almost none of which comprises *Brady* materials, and is thus premature and should be denied. The government is aware of its obligation under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, and will comply with its obligation to provide defense counsel with information that is material to either guilt or to punishment. To the extent that defendant is requiring a written certification that the government has complied with its *Brady* obligations, the government maintains that defendant has cited no authority for the proposition that any such written confirmation is required, nor is the government aware of any such precedent.

The government contends that *Brady* is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation. It also argues that *Brady* is not a pretrial remedy and is not applicable at pre-trial stages.

The government also notes that defendant requests Jencks Act and *Giglio* materials. The government argues that under the Jencks Act, it need not produce the material until after the witness testifies, although it is now common practice for the government to produce it the Friday

before trial.

The government maintains that most of defendant's "*Brady*" requests are actually requests for impeachment materials for the government's witnesses. The government argues that these demands are also premature, given that the trial is still weeks away, and the government's witness list is not finalized. Although the government is under no obligation to disclose *Giglio* material at this time, it addresses the fifteen categories of documents raised by defendant.

Next, the government contends that the indictment has provided defendant with sufficient specifics, and beyond that, he is not entitled to additional particulars. The government notes that defendant has not raised any argument that the indictment is deficient because the indictment tracks the language of the statutes and enumerates all of the elements of the offenses. It notes that the indictment states the approximate dates of the conspiracy, it describes in detail several of the overt acts in the conspiracy, including providing dates, the vehicle identification numbers of the vehicles that were seized by CBP, as well as the serial numbers of several of the shipping containers involved in the conspiracy.

The government also maintains that defendant has not identified any particularized need for the information that he seeks. For example, defendant requests the date that the conspiracy began, but the indictment identifies the date that the conspiracy began "sometime prior to August 9, 2016." Citing case law, the government notes that it is not required to prove the exact date alleged in the indictment. And, it maintains, to the extent that defendant's bill of particulars is an attempt to identify a list of the government's witnesses, he has no right to such a list under Rule 16(a)(2). It also notes that the identity of the co-conspirators it not an element of the offense.

The government also points out that defendant has already been provided with discovery

materials, including police reports describing the investigation, surveillance video from U-Haul, and documents from Larsen Intermodal. The video exposes defendant's co-conspirators but to the extent that defendant requests their names and other identifying information, the government does not have in its possession any such information.

### III.   Law and Analysis

#### A.   The Motion to Compel

Federal Rule of Criminal Procedure 16 provides that the government must disclose the defendant's oral statement; the defendant's written or recorded statement; and the defendant's prior record. Fed. R. Crim. P. 16(a)(1)(A)-(B), (D). The government must also allow the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:

> (i) the item is material to preparing the defense;
> (ii) the government intends to use the item in its case-in-chief at trial; or
> (iii) the item was obtained from or belongs to the defendant.

*Id.* 16(E). Moreover, the government must allow the defendant to inspect any physical or mental examination and any scientific test or experiment under certain conditions. *Id.* 16(F). And lastly, the government must produce to the defendant a written summary of any expert testimony that it intends to use in its case-in-chief at trial. *Id.* 16(G).

Rule 16 also provides that certain information is not subject to disclosure:

> **Information Not Subject to Disclosure.** Except as permitted by Rule 16(a)(1)(A)-(D), (F), and (G), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of

statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500.

*Id.* 16(a)(2).

*Brady* material is any information in the possession of the government that relates to guilt or punishment and that tends to help the defense by either bolstering the defense case or impeaching potential prosecution witnesses. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). This includes *Giglio* evidence that would materially impeach a government witness, *e.g.*, by showing bias or interest. *See Giglio v. United States*, 405 U.S. 150, 154 (1972); *United States v. Bagley*, 473 U.S. 667, 676 (1985). The government generally has no obligation to turn over any exculpatory material of which the defense is already aware. *See Lovitt v. True*, 403 F.3d 171, 185 (4th Cir. 2005) ("*Brady* only applies when evidence is known to the prosecution but unknown to the defense.") (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)). Furthermore, the government has no obligation if the information is available to the defendant through the exercise of diligence. *See United States v. Willis*, 277 F.3d 1026, 1034 (8th Cir. 2002); *Rector v. Johnson*, 120 F.3d 551, 558 (5th Cir. 1997) ("State has no obligation to point the defense toward potentially exculpatory evidence when that evidence is either in the possession of the defendant or can be discovered by exercising due diligence."); *United States v. Serfling*, 504 F.3d 672, 678-79 (7th Cir. 2007) (finding no *Brady* violation when government made documents available for defendant's review).

In addition, there is no requirement that *Brady* or *Giglio* material be produced in pre-trial discovery. *United States v. Davis, Co.*, Cr. A. 01-282, 2003 WL 1825602, *2 (E.D. La. Apr. 8, 2003). The Fifth Circuit has stated, "[ ] *Brady* is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation." *United States v. Beasley*, 576 F.2d 626, 630 (5th Cir. 1978)

(citing *United States v. Agurs*, 427 U.S. 97, 107 (1976)). Therefore, *Brady* "is not a pretrial remedy." *See United States v. Garrett*, 238 F.3d 293, 303 (5th Cir. 2000) (Fish, J., concurring) (quoting *United States v. Scott*, 524 F.2d 465, 467 (5th Cir. 1975)). Rather, a *Brady* violation becomes a concern for courts only after trial, when courts are able to determine whether a nondisclosure deprived a defendant of a fair trial. *See id.* at 303-04 (citing cases). The Fifth Circuit has therefore held that a "prosecutor's compliance with the Jencks Act provided timely disclosures under *Brady*." *United States v. Campagnuolo*, 592 F.2d 852, 860 (5th Cir.1979) (citing cases). The Fifth Circuit has also held that there was no prejudice to the defendant when the government disclosed *Brady* information to the defendant during its case-in-chief. *See United States v. Neal*, 27 F.3d 1035, 1050 (5th Cir. 1994). Lastly, the Fifth Circuit has held that there is no violation of *Giglio* as long as the evidence is disclosed to the defense before the end of trial. *See Hill v. Black*, 887 F.2d 513, 517 (5th Cir. 1989), *vacated on other grounds by* 198 U.S. 801 (1990); *see also United States v. Martinez-Perez*, 941 F.2d 295, 301 (5th Cir. 1991) (reaffirming the *Giglio* aspect of *Hill*). Thus, if the government produces *Brady* material to defendant as it receives such material, no violation of *Brady* occurs.

Here, and as noted above, the government has provided defendant with discovery materials, including police reports describing the investigation, surveillance video – which exposes defendant's co-conspirators – from U-Haul, and documents from Larsen Intermodal. The situation here is one of timing, not of suppression. Defendant has made no showing of prejudice of a substantial due process character in this case. The government indicates that it is aware of its *Brady* and *Giglio* obligations. It states that, while not legally required, it has provided defendants with *Brady* material – and will continue to do so – as it sifts through the information before it. Defendant

9

has not provided this Court with a viable legal justification for ordering the pre-trial discovery of the materials in question, especially impeachment evidence, which need not be produced until after a witness testifies.

The government is aware of its *Brady* and *Giglio* obligations and will produce to Fatty all such material on the Friday (48 hours) before trial. That is the policy in this circuit, and – while Fatty maintains otherwise – this Court sees no reason to deviate from it in this criminal case. As the District Court has done, the Court directs the government to err on the side of caution: Any material arguably covered by *Brady* shall be produced to Fatty. The Court concludes that the government – given this direction – is fully capable of sifting through Fatty's requests to determine whether any such requests seek *Brady* material.

Lastly, while numerous defendants have advanced this argument to the Court, it has yet to find any precedent in this circuit for ordering the government to produce a written confirmation that it has interviewed every person and/or searched every location for exculpatory material.

### B. The Motion for a Bill of Particulars

Federal Rule of Civil Procedure 7(f) of the Federal Rules of Criminal Procedure provides the authority under which a bill of particulars may be obtained. The purpose of a bill of particulars is to inform an accused of the charges against him with sufficient particularity to reduce surprise at trial, to enable adequate defense preparation with the exercise of due diligence and to allow a defendant to plead double jeopardy. *United States v. Vesich*, 726 F.2d 168, 169 (5th Cir. 1984). A bill of particulars should not be used to compel the United States to produce a "detailed exposition of its evidence or to explain the legal theories upon which it intends to rely at trial." *United States v. Burgin*, 621 F.2d 1352, 1359 (5th Cir. 1980) (citing *United States v. Sheriff*, 546

F.2d 604 (5th Cir. 1977)); *see also Downing v. United States*, 348 F.2d 594, 598 (5th Cir. 1965) (noting that a bill of particulars is not be used "for the purpose of obtaining a detailed disclosure of the Government's evidence in advance of trial."). Information necessary for trial preparation should be provided. Generalized discovery is not an appropriate function of a bill of particulars, and it is not a proper purpose in seeking such a bill. *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986); *United States v. Davis*, 582 F.2d 947, 951 (5th Cir. 1978).

When the information sought by a bill of particulars is contained in discovery materials furnished under Rule 16, no claim of prejudicial surprise can be sustained. *United States v. Elam*, 678 F.2d 1234, 1253 (5th Cir. 1982); *United States v. Sullivan*, 421 F.2d 676, 677 (5th Cir. 1970). "Generally, an indictment which follows the language of the statute under which it is brought is sufficient to give a defendant notice of the crime of which he is charged." *United States v. Ramirez*, 233 F.3d 318, 323 (5th Cir. 2000), *overruled on other grounds by United States v. Longoria*, 298 F.3d 367 (5th Cir. 2002).

A cursory review of this Court's factual background section, *see infra*, the indictment and subsequent history of this lawsuit have provided defendant with a plethora of information with which to prepare his defense. Even had the indictment not provided defendant with some of the facts outlined in that section, discovery appears to have revealed sufficient allegations for defendant to prepare his defense. If evidence produced in discovery provides defendant adequate discovery to prepare that defense, defendant cannot claim prejudice because he received no bill of particulars. *Elam*, 678 F.2d at 1253. The indictment, however, specifically describes in detail several of the overt acts in the conspiracy, including providing dates, the vehicle identification numbers of the vehicles that were seized by CBP, as well as the serial numbers of several of the

11

shipping containers involved in the conspiracy.

And to the extent that defendant seeks exact dates for the commencement of the conspiracy, "the 'prosecution, as a consequence of the use of the "on or about" designation, was not required to prove the exact date; it suffices if a date reasonably near is established.'" *United States v. Mata*, 491 F.3d 237, 243 (5th Cir. 2007) (citing *United States v. Valdez*, 453 F.3d 252, 260 (5th Cir. 2006) (quoting *United States v. Grapp*, 653 F.2d 189, 195 (5th Cir. 1981)). Moreover, if that defendant seeks to obtain a list of the government's witnesses, including his co-conspirators, the Fifth Circuit has never conceded such a right to a defendant. *See United States v. Pena*, 542 F.2d 292, 294 (5th Cir. 1976) (citing *United States v. Treatman*, 399 F. Supp. 264, 265-66 (W.D. La. 1975) ("In effect his motion amounted to an attempt to obtain a list of witnesses. He has no right to such a list under Rule 7(f) of the Federal Rules of Criminal Procedure."). Lastly, if defendant seeks the identities of his co-conspirators, he is not entitled to such information. *United States v. Moree*, 897 F.2d 1329, 1332 (5th Cir. 1990) ("A conspiracy conviction does not depend on the identification of the co-conspirators. The co-conspirators need not be identified as long as evidence supports the proposition that such a co-conspirator did exist and that the defendant did conspire with him.") (quotations omitted). In any event, the government maintains to this Court that it does not have such information.

### IV. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Defendant Musa Fatty's Motion for Production of *Brady* Material and for Written Confirmation of Government's Inspection of All Locations Where *Brady* Material May Exist [Doc. #33] and Defendant's Motion for a Bill of Particulars [Doc. #34] are DENIED.

New Orleans, Louisiana, this 3rd day of August, 2018.

                                                      **DANIEL E. KNOWLES, III**
                                                     **UNITED STATES MAGISTRATE JUDGE**